UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 15-cv-23810-MARTINEZ/GOODMAN

ATLANTIC RECORDING CORPORATION, WARNER BROS. RECORDS INC., UMG RECORDINGS, INC., SONY MUSIC ENTERTAINMENT, and CAPITOL RECORDS, LLC,

    Plaintiffs,

v.

ANDREW SAMPSON, AUROUS GROUP, INC. and DOES 1-10,

    Defendants.

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

    Defendants yesterday filed a Response to Plaintiffs' Motion for a Preliminary Injunction ("Response") [D.E. No. 26] of less than two pages in length, and with no admissible evidence supporting it. This scant opposition concedes that Defendants have no answer whatsoever to the evidence that Plaintiffs marshaled in their Preliminary Injunction Motion ("P.I. Motion") [D.E. No. 12], which demonstrated Defendants' intentional inducement of and contribution to copyright infringement, and other conduct that willfully infringes Plaintiffs' copyrights in sound recordings. They also have not rebutted Plaintiffs' evidence of how Defendants' ongoing and unrepentant facilitation of copyright infringement has caused, and unless enjoined by this Court, will continue to cause, irreparable and rapidly growing harm to Plaintiffs. Notably, this

irreparable harm has continued after this Court entered its Temporary Restraining Order ("TRO") on October 15, 2015 [D.E. No. 14].

Defendants' negligible Response essentially concedes their liability. It does not discuss any copyright legal authority (the Response cites only a single case, which simply recites the standard for a preliminary injunction) and it fails to rebut the P.I. Motion's evidentiary showing that Plaintiffs have a strong likelihood of prevailing on the merits of their claims that Defendants are liable for intentional inducement of copyright infringement, contributory infringement, and vicarious infringement. Defendants' Response also fails to rebut the P.I. Motion's demonstration of irreparable, worsening, and ongoing harm caused by Aurous and fails to support its few and demonstrably false assertions with evidence of any kind. *See*, *e.g.*, *Donahay v. Palm Beach Tours & Transp., Inc.*, 2007 WL 1119206, at *2 (S.D. Fla. Apr. 16, 2007) (deeming arguments not made to be waived); *LaFlamme v. Rumford Hosp.*, 2015 WL 4139478, at *20 (D. Me. July 9, 2015) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quotation omitted).

Further exacerbating their contempt of this Court's October 15 TRO, Defendants willfully and unabashedly have continued to cause the infringement of Plaintiffs' copyrights and further have continued to inflict irreparable harm on Plaintiffs, including by acting in wanton disregard of this Court's TRO. By way of example only:

● Defendant Sampson stated in Twitter messages on October 21 that he was "honing the [Aurous] project" to enable the download of unauthorized copies of music files from the video site YouTube; that he would implement that functionality once "the restraining order expires in a few days"; and that "if YouTube has something on there its [sic] not suppose [sic] to,

thats [sic] up to the rights holder to handle, i'm [sic] not your baby sitter." Hentoff Reply Decl. ¶ 2, Ex. 1 (emphasis added).[1]

- Sampson then attempted to delete these incriminating Twitter messages, but Plaintiffs were able to preserve them before deletion.  Hentoff Reply Decl. ¶ 2.

- During the pendency of the TRO, Defendants proceeded with their plan to modify Aurous to make unauthorized copies of music files from YouTube videos, conduct that is infringing and that violates YouTube's terms of service for software developers.  *See* Defendants' Objection to Plaintiffs' Withdrawal of Consent to the Parties' Joint Stipulation ("Objection") 2 [D.E. No. 27] (acknowledging "YouTube's API's were updated making the [earlier version of the] application unable to utilize YouTube");[2] Hentoff Reply Decl., Ex. 2 (YouTube Developers Terms of Service) (prohibiting, among other activities, "isolat[ing] the audio . . . components" of YouTube content; "access[ing] any portion of any YouTube audiovisual content by any means other than use of a YouTube player or other [authorized] video player"; "stor[ing] copies" of YouTube content; and "us[ing] the YouTube API intentionally to encourage or promote copyright infringement").[3]

---

[1] "Hentoff Reply Decl." and "Foster Reply Decl." refer to the declarations of Thomas G. Hentoff and Prof. Ian Foster submitted with this Reply memorandum.  "Hentoff Decl." and "Foster Decl." refer to the declarations submitted with Plaintiffs' P.I. Motion at [D.E. Nos. 12-1 and 12-3].  "Hentoff OSC Decl." and "Foster OSC Decl." refer to the declarations submitted with Plaintiffs' Expedited Motion for an Order To Show Cause at [D.E. Nos. 25-1 and 25-2].  All other declarations cited were submitted with Plaintiffs' P.I. Motion [D.E. No. 12].

[2] "API" refers to an "application programming interface," or a way for one service (such as YouTube) to make certain aspects of its functionality available for third parties to use remotely in their software and services, subject to whatever restrictions the service places on third party use.  Foster Reply Decl. ¶ 4 & n.1.

[3] YouTube's terms of service, and Defendants themselves (Response 2-3), acknowledge that third parties place unauthorized copies of Plaintiffs' recorded music on user-generated content sites like YouTube without Plaintiffs' permission.  Any downloads of those unauthorized files via Aurous are also unauthorized by Plaintiffs and infringe their copyrights.

- On Sunday, October 25, well aware that the Court's TRO was in full force and effect (as shown by the Twitter message discussed above in which Defendant Sampson was counting the days to the TRO's expiration), Defendants willfully and flagrantly violated the TRO by publicly distributing all or substantially all of the "core" Aurous source code that Defendants had previously maintained as confidential and proprietary. Foster OSC Decl. ¶ 8; Hentoff OSC Decl. ¶¶ 4-8. For more than five hours on Sunday, Defendants encouraged third parties to visit their source code repository, allowing unknown numbers of individuals to copy the source code onto their own computers and enabling anyone in the world to copy the Aurous source code to make their own copyright-infringing version of Aurous. *Id.*; Foster OSC Decl. ¶ 5. After efforts by Plaintiffs' counsel on the same day attempting to stop this serious, ongoing violation of the Court's TRO, Defendants' counsel reported that night that public access to the source code had (allegedly) finally been disabled, but only after the source code had been available for hours. Hentoff OSC Decl. ¶ 8.

This Reply responds to the few legal and factual assertions – all unsupported by legal authority or citations to evidence – made in Defendants' Response, and in Defendants' Objection, also filed yesterday.

## ARGUMENT

### A. Plaintiffs Are Substantially Likely To Prevail on the Merits of Their Copyright Infringement Claims

1. Defendants' assertion that "Aurous in no way encourages[] the downloading or playing of copyrighted music," Response 2, is absurd. Defendants themselves contradict it two paragraphs later when they admit that their service "send[s] users to [third-party] locations" to retrieve "Plaintiff[s'] . . . music." *Id.* at 2.

The evidence of Defendants' intentional infringement of Plaintiffs' copyrights is overwhelming.  By way of example only, Defendants:

- designed their service to stream and download (copy) popular recorded music from known sources of pirated music files, P.I. Motion 4-5;

- designed their service to retrieve artwork and album information for <u>popular commercial</u> recorded music in order to display the correct images and information when users download and play back the music, Foster Decl. ¶ 28;

- promote the service on their www.aurous.me website with a large home page image of a search for unauthorized copies of Pink Floyd's classic multi-Platinum album "The Wall," the rights to which are owned by an affiliate of Plaintiffs Atlantic Recording Corporation and Warner Bros. Records Inc., P.I. Motion 5-6;

- advertise that "<u>We have</u>" "your favourite [sic] bands [sic] newest album," *id.* at 5 (emphasis added), and that Aurous users can "Enjoy music how you want to for free," *id.* at 8; and

- personally help users download (copy) unauthorized copies of popular copyrighted music, *id.* at 6-7 (Defendant Sampson showing a user how to download music by Sony Music recording artist Madeon).

All of this activity easily establishes Plaintiffs' liability for intentional inducement of copyright infringement and contributory infringement.  *See* P.I. Motion 10-13; *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032-39 (9th Cir. 2013); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931-34 (2005); *Disney Enter., Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *30-38 (S.D. Fla. Sept. 20, 2013); *Arista Records LLC v. Lime Grp LLC*,

784 F. Supp. 2d 398, 432-34 (S.D.N.Y. 2011); *Cable/Home Comm'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845-47 (11th Cir. 1990).

2. Defendants assert that "Aurous simply is a player of players: Aurous informs users where to locate music." Response 2. This is false. Aurous retrieves music files for users and downloads the files onto users' computers. Users need only enter search terms in Aurous, and Aurous returns a list of available songs. When a user clicks the play icon, Aurous causes a download (copy) of the selected file onto the user's computer and begins playback of the file. When a user clicks the download icon, the Aurous application causes a permanent download (copy) of the selected file onto the user's computer for later playback. Foster Reply Decl. ¶ 5 & n.2. Aurous thus enables users to create vast libraries of infringing music files.

3. Defendants assert that Aurous "maintains a DMCA takedown email." Response 2.[4] This is also false. Nowhere on the Aurous website or in the Aurous application is there any mechanism for a copyright owner to report infringement occurring on the Aurous service. Foster Reply Decl. ¶ 6. And even if there were, Defendants' active steps to <u>shield</u> copyright infringers while <u>thwarting</u> copyright owners is well documented. P.I. Motion 6-7. Defendants' real-life attitude toward copyright enforcement is reflected in the terms of service for Defendant Sampson's separate site for finding infringing content on the Internet, Strike Search, where his "Contact/DMCA" notice says: "If you have a take down request, go away." *Id.* at 3.

---

[4] "DMCA" refers to Section 512 of the Digital Millennium Copyright Act, 17 U.S.C. § 512, which in certain circumstances can provide a "safe harbor" from damages for Internet service providers that – unlike Defendants here – can first satisfy certain threshold requirements, such as registering with the U.S. Copyright Office a designated agent to receive notifications of claimed infringement (*i.e.*, "DMCA takedown email[s]"), and adopting and reasonably implementing a policy to terminate repeat infringers. *See, e.g.*, § 512(c)(2), (i). At that point, qualifying service providers must satisfy an additional set of requirements to show their prompt steps to act against infringement, *see, e.g.*, § 512(c), which Defendants here would badly fail to satisfy.

4.	Defendants do not even attempt to rebut the showing that the four overseas websites their service targeted at launch were known sources of pirated music files – two of them even appearing on the U.S. Trade Representative's "Review of Notorious Markets," defined as "online . . . marketplaces that reportedly engage in and facilitate <u>substantial copyright piracy</u>."[5] Defendants merely assert that these sites have "DMCA takedown capabilities" and "expressly state that they do not allow piracy."  Response 2.  But such fig leaves have not kept such sites off the U.S. Government's list of "Notorious Markets."  This makes sense, since a pirate site's mouthing an anti-infringement policy is meaningless absent evidence that it has "made an effort to . . . impede the sharing of copyright files."  *Grokster*, 545 U.S. at 926.[6]

**B.	A Preliminary Injunction Is Needed To Prevent Defendants from Continuing To Cause Plaintiffs Irreparable Harm**

1.	Defendants argue that "Plaintiffs will not suffer an irreparable [harm] absent relief as Aurous does not host or play music."  Response 2.  This is patently wrong for at least two reasons.  First, the Aurous service irreparably harms Plaintiffs in a number of ways, including by downloading (copying) for users essentially unlimited numbers of infringing copies of Plaintiffs' most valuable copyrighted recordings, which can then be limitlessly copied again and distributed to others, causing harm that cannot be estimated, and that cannot be contained absent a preliminary injunction.  *See* P.I. Motion 8, 16 (citing cases).

---

[5] U.S. Trade Representative, 2014 Out-of-Cycle Review of Notorious Markets 2, 4, 17 (Mar. 5, 2015) (https://ustr.gov/sites/default/files/2014%20Notorious%20Markets%20List%20-%20Published_0.pdf ) (emphasis added); Declaration of Mark McDevitt ("McDevitt Decl.") ¶¶ 7-8.

[6] Defendants assert that one of Aurous' sources, the overseas website Pleer.com, "disallow[s] such pirated music on their sites."  Response 2.  This is false.  On Pleer.com, a web page titled "TOP per a week! [sic]" brazenly offers free infringing downloads of recorded music by such major recording artists as Ellie Goulding ("Love Me Like You Do"), Linkin Park ("In the End"), and The Weeknd ("Can't Feel My Face").  Hentoff Reply Decl. ¶ 4, Ex. 3.

Second, the rapid growth in the user base for the Aurous service in just the first days after its launch means that absent an injunction, the irreparable harm to Plaintiffs would quickly and exponentially increase as more and more users access the Aurous service to infringe more and more, and as infringing copies of Plaintiffs' music are further copied and distributed. According to Defendants' own statements, within days of launch the number of users <u>simultaneously</u> downloading Aurous had jumped to nearly 13,500. Extrapolating from that number, Plaintiffs' computer science expert conservatively estimates that in the neighborhood of 100,000 users downloaded Aurous in the first few days, a number that could exceed 1 million before trial if the service is not enjoined. Foster Reply Decl. ¶¶ 7-9, Ex. E-H. *See Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp.2d 1003, 1013 (C.D. Cal. 2011) (harm caused by a service that is designed to be "scalable" to support a growing number of users justifies preliminary injunctive relief where harm "will continue to increase" before trial).

2.   Defendants for more than five hours on Sunday distributed to the public what they call the "core" source code that powers the file retrieval and copying functionality of Aurous, in flagrant violation of the TRO's prohibition against "infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act . . . including but not limited to, by (a) making the 'Aurous' software application . . . available for download or use." TRO [D.E. No. 14]; *see also* Plaintiffs' Expedited Motion for an Order To Show Cause Why Defendants Should Not Be Held in Contempt of the October 15, 2015 Temporary Restraining Order 3-4 ("OSC Motion") [D.E. No. 25]. That source code can readily be used by third parties to create copycat Aurous software and services that cause infringement in exactly the same way, and to create variants of Aurous that do an even better job of infringing. *See* Foster OSC Decl. ¶ 5. Once Defendants publicly

8

distributed this source code, it became evident from "commit" information visible in the source code files that during the pendency of the TRO Defendant Sampson had been regularly working to enhance the copyright-infringing functionality of Aurous. *See* Foster OSC Decl. ¶ 11.

Defendants' denial of culpability is readily disproved by incontrovertible facts. Defendants assert that the only "Aurous" source code "<u>currently</u> being made available" is from an obsolete version of Aurous that Defendant Sampson abandoned last year. Objection 2 (emphasis added). Defendants appear to be placing far too much weight on the word "currently." As explained in Plaintiffs' OSC Motion and in the attached Reply Declaration of Prof. Ian Foster, the "core" source code that Defendants released to the public for more than five hours Sunday was indeed the current Aurous service's source code, from the current service's repository on the website GitHub.com, at the location: https://github.com/AurousGroup/core. OSC Motion 5; Foster Reply Decl. ¶ 3. That source code is not "currently" being made available, Objection 2, only because Defendants allegedly disabled public access Sunday night after Plaintiffs notified them they would file a contempt motion. OSC Motion 5-6.

In contrast, the entirely different source code repository mentioned in Defendants' Objection does indeed appear to contain code for a project that Defendant Sampson seemingly abandoned last year, stored at a <u>different</u> location: https://github.com/Codeusa/aurous-app. Foster Reply Decl. ¶ 3. That source code was never a subject of Plaintiffs' motion.

Because Defendants publicly distributed the current Aurous' source code on Sunday, Plaintiffs (and an unknown number of others) have a complete set of the source code. It further disproves Defendants' assertion that the code released by Defendants had not been worked on since last year. The source code files contain a record of many revisions that took place between October 10, 2015 and October 25, 2015. Foster OSC Decl. ¶ 11. The source code record

9

matches Defendant Sampson's contemporaneous Twitter messages, where he reported that he was working on efforts to "get[] past" YouTube restrictions, to enable Aurous to create and download unauthorized copies of music files from YouTube.  Foster Reply Decl. ¶ 4, Ex. C.

3. Even in Aurous' current "alpha," or testing, phase, Foster Reply Decl. ¶ 7, an investigator for Plaintiffs was able to use Aurous to download music files matching <u>84</u> of the Billboard "Hot 100" top tracks, all commercial, copyrighted works.  Hentoff Reply Decl. ¶ 5.  Enabling Defendants to continue and further enhance their service will only make infringement of Plaintiffs' copyrights easier and more widespread.

## CONCLUSION

For the reasons stated here, and in Plaintiffs' opening memorandum, a preliminary injunction should be entered against Defendants' copyright-infringing Aurous service.

Dated:  October 27, 2015                Respectfully submitted,

By:  /s/ Karen L. Stetson
Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson
333 S.E. Second Avenue, Suite 3200
Miami, FL  33131
Telephone:  (305) 416-6880
Facsimile:  (305) 416-6887

WILLIAMS & CONNOLLY LLP
Thomas G. Hentoff (*Pro Hac Vice*)
Casey L. White (*Pro Hac Vice*)
725 12th Street, NW
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029

RECORDING INDUSTRY ASSOCIATION
 OF AMERICA
George M. Borkowski (*Pro Hac Vice*)
1025 F Street, NW, 10th Floor
Washington, DC  20004

Telephone: (202) 775-0101

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2015, a true and correct copy of the foregoing Reply Memorandum In Support Of Plaintiffs' Motion For a Preliminary Injunction and supporting papers were served via ECF on all counsel of record.

By: /s/
Karen L. Stetson